# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

|  |  |
|---|---|
| In re: DATA BREACH SECURITY LITIGATION AGAINST CAESARS ENTERTAINMENT, INC. | Lead Case No. 2:23-cv-01447-ART-BNW<br><br>**ORDER** |

Before the Court are three competing motions for appointment of interim class counsel. ECF Nos. 34–36. Although there are no oppositions to the motions, the Court's grant of any motion is to the exclusion of others. The motions demonstrate that each proposed team of attorneys possesses exceptional qualities to satisfy Federal Rule of Civil Procedure 23(g)(1)(A), which requires the Court to consider the work counsel has performed, counsel's knowledge, counsel's experience, and counsel's resources. But because the first proposed team of attorneys has shown additional pertinent qualifications—including diversity, majority support, and filing order—that the Court may consider under Rule 23(g)(1)(B), the Court grants their motion. ECF No. 34. As such, the other two motions are denied. ECF Nos. 35, 36.

## I.      BACKGROUND

This is a class action data breach case arising from a cyberattack that allowed a perpetrator to glean sensitive, personally identifying information from Caesars Loyalty Program members. *See generally* ECF No. 1. Plaintiffs allege that they were damaged by Caesars's purportedly inadequate security protocols. *Id.*

About a month after the initial underlying case was filed, the Court consolidated numerous cases.[1] ECF No. 21. Following the initial consolidation order, the parties filed the three subject motions for appointment of interim class counsel. ECF Nos. 34–36. Shortly thereafter, the

---

[1] *Rodriguez*, 2:23-cv-01447; *Garcia*, 2:23-cv-01482; *Giuffre*, 2:23-cv-01483; *Lackey*, 2:23-cv-01562; *McNicholas et al.*, 3:23-cv-00470.

1   Court consolidated even more cases.[2] ECF No. 46. The Court then entered its final consolidation

2   order at the beginning of 2024.[3] ECF No. 55. In total, 19 cases have been consolidated under this

3   lead case. *See* ECF Nos. 21, 46, 55.

4   **II.   LEGAL STANDARD**

5          "The court may designate interim class counsel to act on behalf of a putative class before

6   determining whether to certify the action as a class action" when it is "necessary to protect the

7   interests" of class members. FED. R. CIV. P. 23(g)(3); MANUAL FOR COMPLEX LITIGATION

8   (FOURTH) § 21.11 (2004). This typically occurs in cases where "a large number of putative class

9   actions have been consolidated or otherwise are pending in a single court." *In re Nest Labs*

10  *Litigation*, No. 14-cv-01363-BLF, 2014 WL 12878556, at *1 (C.D. Cal. Aug. 18, 2014) (citing

11  *Donaldson v. Pharmacia Pension Plan*, No. CIV. 06-3-GPM, 2006 WL 1308582, at *1–2 (S.D.

12  Ill. May 10, 2006)). Designation of interim class counsel is also appropriate when there is

13  competition between law firms to represent the class. *See Parish v. Nat'l Football League*

14  *Players*, Inc., No. C 07-00943 WHA, 2007 WL 1624601, at *9 (N.D. Cal. June 4, 2007)

15  (declining to designate interim class counsel without a "gaggle of law firms jockeying to be

16  appointed").

17         Federal Rule of Civil Procedure 23(g)(1)(A) sets out the considerations that courts must

18  weigh when appointing class counsel once a class has been certified, which courts also apply to

19  the appointment of interim class counsel prior to class certification. *See, e.g.*, *Wright v. Jacob*

20  *Transp., LLC*, No. 2:15-cv-00056-JAD-GEF, 2015 WL 3916001, at *3 (D. Nev. June 24, 2015)

21  (citing *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006)).[4]

22  _____

23  [2] *Dwek*, 2:23-cv-01659; *Carrozzella et al.*, 2:23-cv-01725; *Elvidge*, 2:23-cv-01662; *Gill*, 2:23-cv-01656; *Brewster*, 3:23-cv-00525; *McCusker*, 2:23-cv-01799; *Katz*, 2:23-cv-01836.

24  [3] *Cherveny et al.*, 2:23-cv-01818; *Martin et al.*, 2:23-cv-01865; *Williams et al.*, 2:23-cv-01919; *Popp et al.*, 3:23-cv-00633; *Balsamo et al.*, 2:24-cv-00043; *Lassoff et al.*, 2:24-cv-00127; *Blair-Smith*, 2:24-cv-00169.

25  [4] The Manual for Complex Litigation provides different approaches to selecting class counsel.

26  First, there is the "private ordering" approach where the attorneys agree who should be lead class counsel and the court approves the selection after a review. MANUAL FOR COMPLEX LITIGATION

27  (FOURTH) § 21.272 (2004). Second, the "selection from competing counsel" where the court selects counsel, who are unable to agree, based on the examination of the factors in

28  Rule 23(g)(1)(A). *Id.* Third, there is a "competitive bidding" process that is novel and

The four factors courts must consider when appointing interim class counsel include:

1. the work counsel has done in identifying or investigating potential claims in the action;

2. counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

3. counsel's knowledge of the applicable law; and

4. the resources that counsel will commit to representing the class.

FED. R. CIV. P. 23(g)(1)(A)(i)–(iv).

Courts can also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B). "If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class." FED. R. CIV. P. 23(g)(2).

## III.    ANALYSIS

Appointing interim class counsel is appropriate in this case because this is a consolidated action, and three teams of attorneys are competing to represent the putative class. *See Nest Labs*, 2014 WL 12878556, at *1; *Parish*, 2007 WL 1624601, at *9. Thus, appointing interim class counsel is necessary to protect the interests of the class. *See* MANUAL OF COMPLEX LITIGATION (FOURTH) § 21.11 (2004).

Three cohorts of attorneys seek appointment:

<strong><u>"First Cohort"</u></strong>

**Interim Class Counsel:** (1) John A. Yanchunis, *Morgan & Morgan*; (2) Douglas J. McNamara, *Cohen Milstein*; (3) Amy E. Keller, *Dicello Leavitt LLP*.

**Plaintiffs' Steering Committee:** (1) Jeff Ostrow, *Kopelowitz Ostrow Ferguson Weiselberg Gilbert* (Chair); (2) James Pizzirusso, *Hausfeld LLP*; (3) Gerard Stranch, *Stranch, Jennings & Garvey*; (4) Gary M. Klinger, *Milberg Coleman Bryson Phillips Grossman PLLC*; (5) Sabita J. Soneji, *Tycko & Zavareei LLP*; (6) Linda Nussbaum; *Nussbaum Law Group, P.C.*

**Liaison Counsel:** Don Springmeyer, *Kemp Jones*.

---

experimental and has been used for antitrust and securities cases. *Id.* As the parties do not agree who should be lead counsel, the Court uses the factors in Rule 23(g)(1)(A) and considerations in Rule 23(g)(1)(B) to make its determination.

**"Second Cohort"**

**Interim Class Counsel:** (1) Ben Barnow, *Barnow and Associates, P.C.*; (2) Todd S. Garber, *Filkelstein, Blankinship, Frei-Pearson & Garber, LLP*.

**Liaison Counsel:** David C. O'Mara; *The O'Mara Law Firm, P.C.*

**"Third Cohort"**

**Interim Class Counsel:** (1) Gary F. Lynch, *Lynch Carpenter, LLP*; (2) Erin G. Comite, *Scott + Scott Attorneys at Law LLP*.

**Liaison Counsel:** Jennifer A. Fornetti, *Bourassa Law Group*.

The Court discusses each cohort's qualifications in light of the Rule 23(g)(1)(A) factors and additional Rule 23(g)(1)(B) considerations below.

**A.   Interim Co-Lead Class Counsel**

Each cohort's motion contains a discussion of the four factors the Court must consider. *See* ECF Nos. 34–36. "Thus, the question is not whether either team is qualified, but which team has the best chance of effectively representing the putative class and ensuring that this case proceeds in an efficient manner." *In re Folgers Coffee, Mktg. Litig.*, No. 21-2984-MD-C-BP, 2021 WL 7906854, at *2 (W.D. Mo. June 7, 2021). The Court discusses each of the Rule 23(g)(1)(A) factors and Rule 23(g)(1)(B) considerations in turn.

**1.   *Counsel's Work***

The first factor the Court considers is the work counsel has done in identifying or investigating potential claims in the action. FED. R. CIV. P. 23(g)(1)(A)(i). The First Cohort represents that they have retained experts, coordinated with other attorneys in the action, drafted complaints (including the first complaint in the action), conducted a preliminary investigation of the data breach, performed factual research, coordinated consolidation, and initiated early discussions about class leadership. ECF No. 34 at 5–6. The Second Cohort submits that they have investigated the factual underpinnings of the breach, researched and analyzed legal theories, engaged in communications with Plaintiffs, investigated the scope of the breach, reviewed Caesars's public statements, and drafted complaints. ECF No. 35 at 3–4. And the Third Cohort states that they have researched potential claims, waited to file complaints until they conducted a sufficient investigation and confirmed the subject violation via Caesars's notice, reviewed news

articles, analyzed Federal Trade Commission guidelines, investigated the nature of the conduct, reviewed statements by Caesars, investigated the adequacy of potential plaintiffs, and drafted complaints. ECF No. 36 at 9–11.

The Court concludes that each group has engaged in a substantial amount of time and effort identifying and investigating the potential claims of the putative class in this case. As such, the first factor does not favor any of the groups.

### 2.  *Counsel's Experience*

Next, the Court examines counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action. FED. R. CIV. P. 23(g)(1)(A)(ii). The First Cohort consists of attorneys who belong to plaintiffs-side and class actions firms; who have held various leadership positions on numerous data breach, consumer protection, and privacy class action cases; who chair pertinent practice and working groups; who teach and publish articles on the subject matter, and who have obtained large class action settlements. ECF No. 34 at 7–12. The Second Group is comprised of attorneys who have held various leadership positions on complex consumer, privacy, and historic data privacy class actions; who have obtained class action settlements and appeals; who sit on related subject-matter panels and present CLEs on the topics, and who have brought cases against large corporate defendants. ECF No. 35 at 4–10. The Third Cohort includes attorneys who belong to plaintiffs-side firms; who have held various leadership positions on numerous data breach, privacy, and securities class action cases; who have obtained large class action settlements, who oversee pertinent litigation departments, and who have developed law for both trial and appellate courts on data privacy issues. ECF No. 36 at 12–20.

Given the extensive experience of the attorneys in each of the three cohorts, the Court has no doubt that each group is capable of handling this class action. The high caliber of experience across each of the three groups demonstrates that this factor does not favor any group over another.

1

### 3. Counsel's Knowledge

2    The third factor the Court evaluates is counsel's knowledge of the applicable law. FED. R.

3    CIV. P. 23(g)(1)(A)(iii). The First Cohort points to data breach, privacy, cybersecurity,

4    technology, class action, complex litigation, and plaintiffs-side expertise. ECF No. 34 at 7–12.

5    Similarly, the Second Cohort highlights their knowledge in historic data privacy, complex class

6    action, data breach, and consumer law cases. ECF No. 35 at 4–10. Lastly, the Third Cohort

7    emphasizes knowledge in complex class action, data breach, privacy, wiretapping, and plaintiffs-

8    side litigation. ECF No. 36 at 12–20.

9    Given the vast similarities and overlapping nature of each cohort's practice areas, the

10   Court is confident in each team's subject-matter knowledge and expertise. Therefore, it does not

11   find this factor to weigh in favor of any one group.

12

### 4. Counsel's Resources

13   Finally, the Court addresses the resources that counsel will commit to representing the

14   class. FED. R. CIV. P. 23(g)(1)(A)(iv). The First Cohort submits that their respective firms consist

15   of many attorneys; that they have sufficient resources to pursue the case from discovery to trial;

16   and that they maintain contact with a wide network of professionals, including experts, that will

17   aid them in their ongoing investigations. ECF No. 34 at 22–23. The Second Cohort represents that

18   they will expend necessary time and resources; that they have sufficient manpower (as

19   demonstrated by prior successful class actions); and that they will perform efficient, non-

20   duplicative work. ECF No. 35 at 10. Finally, the Third Cohort maintains that counsel hails from

21   well-established firms, that they have sufficient resources and personnel for class actions—not

22   just financially, but also in the form of expertise and work product—and that they have access to

23   a well-developed repository of information. ECF No. 36 at 21.

24   Based on these representations, it is clear that each group has proven themselves willing to

25   commit the necessary time and resources to the case. Thus, this factor too does not favor a

26   particular cohort.

27   After reviewing the application materials from each team, including the resumes of the

28   individual attorneys, as well as the track records of their respective firms, the Court finds that

1  each cohort has done the necessary investigative work and possesses the knowledge, experience,

2  and resources required to litigate this case.

3                                 **5. *Other Pertinent Matters Supporting Appointment***

4          Because each cohort has demonstrated sufficiency under each of the Rule 23(g)(1)(A)

5  factors, the Court can also "consider any other matter pertinent to counsel's ability to fairly and

6  adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B). The cohorts have

7  raised numerous distinguishing factors, including diversity of the proposed team, support from

8  plaintiffs, the cost efficiency of the proposed team, and the order in which proposed counsel filed

9  their complaints. *See* ECF Nos. 34–36. The Court discusses each below.

10                                      a.  <u>Diversity</u>

11          A proposed team's diversity is a factor the Court can consider in appointing interim class

12  counsel. *See, e.g.*, *In re Stubhub Refund Litig*., No. 20-MD-02951-HSG, 2020 WL 8669823, at *1

13  (N.D. Cal. Nov. 18, 2020) (appointing as co-lead interim counsel applicants who "demonstrated

14  careful attention to creating a diverse team"); *In re Robinhood Outage Litigation*, No. 20-CV-

15  01626-JD, 2020 WL 7330596, at *2 (N.D. Cal. July 14, 2020) (noting the need for diversity and

16  how "the attorneys running this litigation should reflect the diversity of the proposed national

17  class").

18          Here, both the First Cohort and the Third Cohort highlight diverse aspects within their

19  proposed teams. *See* ECF Nos. 34, 36. The First Cohort points to Ms. Keller's position on her

20  firm's Diversity, Equity, and Inclusion Committee and her commitment to recruiting persons

21  from diverse backgrounds and distributing work to colleagues in a manner that ensures that those

22  with less experience can play an active role in the litigation. ECF No. 34 at 11. And the Third

23  Cohort emphasizes Mr. Lynch's firm's commitment to mentoring a broad-based and diverse

24  group of attorneys to enable their ascension to leadership positions within the field as well as Ms.

25  Comite's firm's recognition in securing representation of women in their equity partnership. ECF

26  No. 36 at 13, 19. Because the Second Cohort does not discuss the diversity of their proposed

27  team, the Court finds that this consideration favors the First Cohort and the Third Cohort.

28

b. <u>Support</u>

While appointment of interim class counsel is "not a popularity contest," courts have recognized that support garnered from multiple plaintiffs can demonstrate a proposed team's ability to work cooperatively with a large group of plaintiffs and attorneys, and to do so in the best interests of the class. *In re Lenovo Adware Litig.*, No. 15-MD-02624, 2015 WL 10890657, at *2 (N.D. Cal. July 27, 2015); *White v. Med. Rev. Inst. of Am.*, LLC, No. 2:22CV00082-DAK-DAO, 2022 WL 2905665, at *3 (D. Utah July 22, 2022). "The purpose of appointing interim class counsel is to ensure that the litigation proceeds smoothly and efficiently until the class certification stage, and for obvious reasons, a leadership structure that represents the majority of the plaintiffs and plaintiffs' attorneys can more effectively achieve this purpose." *Folgers*, 2021 WL 7906854, at *3.

Here, the breakdown of support is as follows: the First Cohort has the support of plaintiffs in 10 cases,[5] the Second Cohort has the support of plaintiffs in 2 cases,[6] and the Third Cohort has the support of plaintiffs in 1 case.[7] ECF Nos. 34–36. Because the remainder of the cases were consolidated after the motions were filed and were not identified in the cohorts' briefing, it is unclear which proposed team (if any) they support.[8] While support from a large majority of plaintiffs and their counsel alone would not be a sufficient reason to favor the First Cohort, it does reflect a broad, nationwide level of support. *Lenovo*, 2015 WL 10890657, at *2. And the fact that the First Cohort has consistently enjoyed the support of a substantial majority of the plaintiffs and their counsel throughout this litigation is indicative of their ability to work cooperatively on

---

[5] *Rodriguez*, 2:23-cv-01447; *Garcia*, 2:23-cv-01482; *Giuffre*, 2:23-cv-01483; *Lackey*, 2:23-cv-01562; *Carrozzella et al.*, 2:23-cv-01725; *Elvidge*, 2:23-cv-01662; *Gill*, 2:23-cv-01656; *Katz*, 2:23-cv-1836; *Cherveny et al.*, 2:23-cv-01818; *Martin et al.*, 2:23-cv-1865.

[6] *McNicholas et al.*, 3:23-cv-00470; *Brewster*, 3:23-cv-00525.

[7] *McCusker*, 2:23-cv-01799. At the time their motion was filed, the Third Cohort also had the support of *Jones*, 2:23-cv-01884, but this plaintiff has since voluntarily dismissed her case. ECF No. 11.

[8] *Williams et al.*, 2:23-cv-01919; *Popp et al.*, 3:23-cv-00633; *Balsamo et al.*, 2:24cv00043; *Lassoff et al.*, 2:24-cv-00127; *Blair-Smith*, 2:24-cv-00169. It is also unclear who has the support (if any) of *Dwek*, 2:23-cv-01659, though the case was consolidated before the cohorts' briefing.

behalf of the many plaintiffs in this case, and to work in their best interests. *Id.* Thus, this consideration tips in favor of the First Cohort.

### c.  Cost Efficiency

Other factors the Court can consider include "whether there has been full disclosure of all agreements and understandings among counsel" and "whether there are clear and satisfactory guidelines for compensation and reimbursement." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.224 (2004).

The Second Cohort asks the Court to consider the size of the proposed attorney teams as they contend that too many attorneys "create wasteful and duplicative efforts" and "shift benefits away from class to counsel." ECF No. 35 at 1, 3. While the Court is mindful of their cost concerns and agrees with the notion of prioritizing Plaintiffs' benefits, there is nothing to suggest that a larger group of attorneys than the Second Cohort's team could not work efficiently. *See Lowery v. Spotify USA Inc.*, No. CV1509929BRORAOX, 2016 WL 6818756, at *5 (C.D. Cal. May 23, 2016) (finding that there was nothing to suggest that a multi-firm team would be "inefficient" or "engage in duplicative work"). The Court also finds that the First Cohort has significant experience in monitoring billing, controlling costs, and avoiding duplication of effort from their work in prior class action cases and that any concerns of duplication or inefficiency can be mitigated by the team's Proposed Time Management and Billing Protocol. ECF No. 34 at 23; ECF No. 34-11 (requiring detailed billing descriptions; advanced, written approval by class counsel; monthly submissions of time and expenses in a certified, agreed-upon report; minimal attorney attendance at meetings and hearings; and exclusion of certain categories of time and expenses). Given the detail and complexity of the First Cohort's billing protocol, the Court finds that this consideration weighs in their favor. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.224 (2004).

### d.  Filing Order

Where "consideration of other relevant factors does not tilt heavily in either direction and there is a need for an objective tie-breaker," courts may also consider which party was first to file a complaint. *See Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003); *Steele v. United States*,

1   2015 WL 4121607, at *4 (D.D.C. June 30, 2015) ("[S]ince both groups are more than qualified to

2   handle this action, it would be imminently reasonable to select the Motley Rice Group on the

3   basis that their complaint was filed first.").

4          The Third Cohort asks that the Court discount which party was first to file because they

5   contend that other counsel rushed to file rather than waiting until Caesars disseminated breach

6   notifications. ECF No. 36 at 4. They argue that in filing before the data breach notification, a

7   putative plaintiff might not be an adequate class representative because they may not have

8   actually been implicated by the breach. *Id.* Thus, the Third Cohort asserts that filing too soon cuts

9   against other counsel's requisite due diligence. *Id.*

10         Though the Court acknowledges the Third Cohort's concerns regarding the adequacy of

11  the eventual class representative, such concerns will be addressed during the class certification

12  stage and upon the selection of said class representative. And, as the Court discussed above, both

13  the First Cohort and Second Cohort demonstrated sufficient investigative efforts leading up to the

14  filing of their complaints. "[I]t would be an abuse of discretion to appoint an attorney as class

15  counsel *solely* because he may have won the race to the courthouse." *Lowery*, 2016 WL 6818756,

16  at *3, n.2 (citing *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1048 (9th Cir.

17  2015)) (emphasis added). However, a significant body of other courts has acknowledged that,

18  where the Rule 23(g)(1)(A) factors are equal, being first to file bears out a proposed team's

19  preparation and commitment to prosecuting the case. *See, e.g.*, *Ekin v. Amazon Servs., LLC*, No.

20  C14-0244-JCC, 2014 WL 12028588, at *4 (W.D. Wash. May 28, 2014) (considering who filed

21  the first complaint, among other factors, when selecting interim class counsel among competing

22  applicants); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008)

23  (appointing as interim lead counsel the firms that filed the first complaints); *Michelle v. Arctic

24  Zero, Inc.*, 2013 WL 791145, at *2 n.3 (S.D. Cal. Mar. 1, 2013) ("[F]irst-to file can be a relevant

25  factor when the factors for class counsel do not tilt heavily in either direction and there is a need

26  for an objective tie-breaker."). Because the Court finds that each cohort has satisfied the Rule

27  23(g)(1)(A) factors, it can consider being first to file as a plus to the First Cohort.

28                                               * * *

Each of the teams seeking appointment has put forward experienced class action and data privacy attorneys who have much to offer this case and who are well-qualified to vigorously litigate the consolidated action. Each has performed significant work thus far in the case, has commendable knowledge and experience, and appears able to devote substantial resources to the litigation. *See* FED. R. CIV. P. 23(g)(1)(A)(i)–(iv). But in terms of other pertinent matters under Rule 23(g)(1)(B), the First Cohort were not only the first to file a complaint, but also have majority support from Plaintiffs and offer a diverse team of attorneys. The Court therefore finds that the interests of the putative class would be best served by appointing the First Cohort—which is comprised of John A. Yanchunis, Douglas J. McNamara, and Amy Keller—as co-lead interim class counsel.

### B. Plaintiffs' Steering Committee

In addition to seeking appointment as co-lead interim class counsel, the First Cohort also seeks appointment of a Plaintiffs' Steering Committee ("PSC") and a PSC Chair. ECF No. 34 at 12–21. They argue that the scope of Caesars's data breach and the resulting intensive discovery necessitate appointment of a PSC to assist co-lead interim class counsel. *Id.* at 12. According to the First Cohort, the PSC will "work under and at the direction of the co-lead counsel to ensure that the case runs smoothly and efficiently." *Id.*

"[Steering] [c]ommittees are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision-making." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.221 (2004). "Committees of counsel can sometimes lead to substantially increased costs, and they should try to avoid unnecessary duplication of efforts and control fees and expenses." *Id.*

Here, the First Cohort seeks appointment of a 6-person PSC. Each attorney hails from a different firm; has extensive knowledge and experience in data security and privacy litigation; and has served in various leadership positions in prior class action cases including as lead counsel, co-lead counsel, liaison counsel, or as a steering committee member. ECF No. 34 at 12–21. The group also consists of attorneys and firms who have espoused a commitment to diversity. *See, e.g.*, *id.* at 16.

Because this action is a 19-case, multi-district litigation, the multiplicity of suits, complexity of claims, and diversity of the plaintiffs warrants appointment of a PSC. *See In re Showa Denko K.K. L-Tryptophan Prod. Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992) ("The multiplicity of suits requires that the district court be allowed to combine procedures, appoint lead counsel, recognize steering committees of lawyers, limit and manage discovery, etc. to minimize expense to all litigants and to provide judicial efficiency."). The Court finds that any concerns regarding increased costs and duplication of efforts can be curtailed by the First Cohort's detailed billing protocol, which also governs the PSC. *See* ECF No. 34-11. The Court therefore appoints Jeff Ostrow as PSC Chair and James Pizzirusso, Gerard Stranch, Gary M. Klinger, Sabita J. Soneji, and Linda Nussbaum to the PSC.

**C. Liaison Counsel**

Lastly, the First Cohort also seeks appointment of Don Springmeyer as liaison counsel. ECF No. 34 at 21–22. They assert that Mr. Springmeyer is well-versed in the duties and obligations of liaison counsel because he has served in this role in many other prominent class action cases within this District and others. *Id.* at 22.

A court, in its discretion, may appoint interim liaison counsel to assist interim lead counsel primarily with administrative matters. *See Walker v. Discover Fin. Servs.*, No. 10–cv–6994, 2011 WL 2160889, at *3 (N.D. Ill. May 26, 2011); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.221 (2004). Liaison counsel generally assists lead counsel with administrative matters such as filings, communications with the court and other counsel, convening meetings of counsel, assuring compliance with local rules, and attending hearings. *See Walker*, 2011 WL 2160889, at *5.

Given his subject-matter and position-specific knowledge and experience, the Court concludes that Mr. Springmeyer is well-suited to serve as interim liaison counsel alongside the First Cohort's co-lead interim class counsel and PSC. The group's billing protocol also applies to liaison counsel and will help assure cost efficiency in coordinating Mr. Springmeyer's efforts in conjunction with the other team members. *See* ECF No. 34-11.

1

IV.   **CONCLUSION**

2      **IT IS THEREFORE ORDERED** that the First Cohort's Motion for Appointment of

3 Interim Class Counsel (ECF No. 34) is GRANTED.

4      **IT IS FURTHER ORDERED** that John A. Yanchunis, Douglas J. McNamara, and Amy

5 E. Keller are appointed as co-lead interim class counsel.

6      **IT IS FURTHER ORDERED** that Jeff Ostrow is appointed as chair of the Plaintiffs'

7 Steering Committee.

8      **IT IS FURTHER ORDERED** that James Pizzirusso, Gerard Stranch, Gary M. Klinger,

9 Sabita J. Soneji, and Linda Nussbaum are appointed to the Plaintiffs' Steering Committee.

10     **IT IS FURTHER ORDERED** that Don Springmeyer is appointed as interim liaison

11 counsel.

12     **IT IS FURTHER ORDERED** that the competing motions (ECF Nos. 35 and 36) are

13 DENIED.

14     **IT IS FURTHER ORDERED** that Plaintiffs shall file a superseding consolidated

15 amended complaint no later than 45 days from the date of this Order.

16     **IT IS FURTHER ORDERED** that the parties shall file a Discovery Plan and Scheduling

17 Order no later than 14 days from the filing of the consolidated amended complaint.

18

19     DATED this 12th day of June 2024.

20

21     _____

22     BRENDA WEKSLER
       UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28