1  Adam Hosmer-Henner (NSBN 12779)
   Chelsea Latino (NSBN 14227)
2  Jane Susskind (NSBN 15099)
   **McDONALD CARANO LLP**
3  100 West Liberty Street, Tenth Floor
   Reno, Nevada 89501
4  Telephone: (775) 788-2000
   ahosmerhenner@mcdonaldcarano.com
5  clatino@mcdonaldcarano.com
   jsusskind@mcdonaldcarano.com
6
   Serrin Turner (admitted *pro hac vice*)
7  **LATHAM & WATKINS LLP**
   1271 Avenue of the Americas
8  New York, New York 10022-4834
   Telephone: (212) 906-1200
9  serrin.turner@lw.com

10  *Attorneys for Defendant Caesars Entertainment, Inc.*

11              **UNITED STATES DISTRICT COURT**

12                    **DISTRICT OF NEVADA**

13
    | | |
    |---|---|
    | In re: DATA BREACH SECURITY LITIGATION AGAINST CAESARS ENTERTAINMENT, INC. | Master File No. 2:23-cv-01447-ART-BNW <br><br> CLASS ACTION <br><br> **DEFENDANT CAESARS ENTERTAINMENT, INC.'S MOTION TO STAY DISCOVERY** |

**TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 1 |
| | A. Caesars' Motion to Dismiss Has Been Filed and Will Soon Be Fully Briefed | 1 |
| | B. Plaintiffs Seek to Take Far-Reaching Discovery While the Motion Is Pending | 2 |
| III. | THIS COURT HAS BROAD DISCRETIONARY POWER TO STAY DISCOVERY | 3 |
| IV. | THE COURT SHOULD STAY DISCOVERY PENDING CAESARS' MOTION | 4 |
| | A. Caesars' Motion is Potentially Dispositive | 4 |
| | B. Caesars' Motion Will Be Decided Without the Need For Discovery | 4 |
| | C. A "Preliminary Peek" Supports the Complaint's Likely Dismissal | 5 |
| | D. Good Cause Exists to Stay Discovery | 7 |
| V. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES
**Cases**                                     **Pages**

*Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*,
   5 F.3d 378 (9th Cir. 1993) ......................................................................................................3

*Bank of N.Y. Mellon v. Stewart Info. Servs. Corp.*,
   2022 WL 494213 (D. Nev. Jan. 11, 2022)............................................................................4, 9

*Borenstein v. Animal Found.*,
   2020 WL 7323346 (D. Nev. Oct. 13, 2020) .........................................................................4, 7

*Closson v. The Bank of New York Mellon*,
   2021 WL 1823567 (D. Nev. March 25, 2021).........................................................................3

*DM Rsch., Inc. v. Coll. of Am. Pathologists*,
   170 F.3d 53 (1st Cir. 1999) ......................................................................................................4

*Duffy v. ASNY NY, LLC*,
   2022 WL 1785395 (D. Nev. May 31, 2022).......................................................................9, 10

*I.C. v. Zynga, Inc.*,
   600 F. Supp. 3d 1034 (N.D. Cal. 2022) ...................................................................................5

*In re Graphics Processing Units Antitrust Litig.*
   2007 WL 2127577 (N.D. Cal. July 24, 2007)..........................................................................8

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
   2021 WL 10428229 (S.D. Fla. Oct. 9, 2021) ..........................................................................7

*In re Practicefirst Data Breach Litig.*,
   2022 WL 354544 (W.D.N.Y. Feb. 2, 2022) ............................................................................6

*In re Zappos.com, Inc.*,
   888 F.3d 1020 (9th Cir. 2018) .................................................................................................5

*Jarvis v. Regan*,
   833 F.2d 149 (9th Cir. 1987) ...................................................................................................4

*Jimenez v. GEICO Secure Ins. Co.*,
   2023 WL 8254492 (D. Nev. Nov. 29, 2023) (Weksler, J.)...................................................7, 8

*Krottner v. Starbucks Corp.*,
   628 F.3d 1139 (9th Cir. 2010) .................................................................................................5

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)................................................................................................................3

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001)), *aff'd in relevant part*, 301 F. App'x 675 (9th
  Cir. 2008) ................................................................................................................................4

*Little v. City of Seattle*,
  863 F.2d 681 (9th Cir. 1988) ..................................................................................................3

*Long v. Gamo Outdoor S.L.U.*,
  2022 WL 2819662 (D. Nev. July 18, 2022) ............................................................................9

*Noland v. Organo Gold Int'l, Inc.*,
  2019 WL 1779568 (D. Nev. Apr. 23, 2019) ............................................................................4

*Patterson v. Med. Review Inst. of Am., LLC*,
  2022 WL 2267673 (N.D. Cal. June 23, 2022) .........................................................................6

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*,
  45 F.4th 816 (5th Cir. 2022) ....................................................................................................5

*Quintero v. Metro Santurce, Inc.*,
  2021 WL 5855752 (D.P.R. Dec. 9, 2021) ................................................................................6

*Razuki v. Caliber Home Loans, Inc.*,
  2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) .........................................................................7

*Rutman Wine Co. v. E. & J. Gallo Winery*,
  829 F.2d 729 (9th Cir. 1987) ...................................................................................................1

*Schrader v. Wynn Las Vegas, LLC*,
  2021 WL 4810324 (D. Nev. Oct. 14, 2021) ........................................................................3, 7

*Speaks v. Employers Holdings, Inc.*,
  2023 WL 4561451 (D. Nev. July 17, 2023) ............................................................................8

*Tracy v. United States*,
  243 F.R.D. 662 (D. Nev. 2007) ...............................................................................................4

*Tradebay, LLC v. eBay, Inc.*,
  278 F.R.D. 597 (D. Nev. 2011) ...............................................................................................3

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .................................................................................................................5

*Travis v. Assured Imaging LLC*,
  2021 WL 1862446 (D. Ariz. May 10, 2021) ...........................................................................6

*Wood v. McEwen*,
  644 F.2d 797 (9th Cir. 1981) ...................................................................................................7

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Discovery in large data breach cases is a notoriously complex and expensive undertaking. When a data breach case rests on claims that are challenged in a motion to dismiss, as is the case here, staying discovery while the motion is pending serves the purpose of potentially preventing that complex and expensive undertaking in a situation where, if the motion is granted, the entire process would be for nought. Defendant Caesars Entertainment, Inc. ("Caesars") has filed a motion to dismiss ("Motion") that has the potential to eliminate or greatly narrow the claims asserted in Plaintiffs' Consolidated Complaint, and requires no discovery to resolve. Caesars' Motion raises threshold challenges—including whether Plaintiffs have Article III standing or have alleged cognizable injuries to support their claims—and contests each of the asserted common law and statutory claims on multiple grounds. Starting discovery before resolving Caesars' Motion would place the parties at risk of accruing unnecessary expenses from costly discovery into claims and issues that the Court may ultimately dismiss. And here, that discovery promises to expansive, will impact multiple third parties, and could involve issues arising under nine different states' laws that Plaintiffs invoke in the Amended Complaint. "It is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

Under these circumstances, this Court has broad authority to stay discovery pending adjudication of the Motion, and it should do so here.

## II. BACKGROUND

### A. Caesars' Motion to Dismiss Has Been Filed and Will Soon Be Fully Briefed

Plaintiffs filed this lawsuit after Caesars disclosed a cyber-extortion attack that occurred in August 2023 (the "Attack"). The Attack occurred after criminal hackers tricked a third-party IT vendor into providing credentials for certain Caesars' network accounts, which the attackers then leveraged to gain access to Caesars' systems and download information concerning members of Caesars' customer rewards program. Once they accessed this data, the attackers demanded a large

1  ransom payment from Caesars, which Plaintiffs acknowledge Caesars paid to secure the deletion
2  of the exported data. As an additional precaution, Caesars also promptly offered free,
3  comprehensive identity theft protection and credit monitoring services to all members of its
4  Rewards program—even though there was no evidence that the data was ever released or sold by
5  the attackers after the ransom was paid.

6  Despite Caesars' actions, the very day after Caesars announced the Attack in an SEC
7  filing—when virtually nothing was known by Plaintiffs about how the Attack occurred, what data
8  may have been affected, what happened to that data, and what affected (if any) the Attack may
9  have had on Caesars Rewards members—Plaintiffs rushed the courthouse in a race to be the first
10 to file a lawsuit about the Attack. During that rush, various Plaintiffs filed over 20 different
11 lawsuits against Caesars relating to the Attack. The Court ultimately consolidated all of the
12 overlapping putative class actions, and Plaintiffs filed a Consolidated Complaint on July 27, 2024.
13 (ECF 81). On September 12, 2024, Caesars filed its Motion, to which Plaintiffs responded on
14 October 28, 2024. (ECF 91, 96). Caesars' reply is due on November 27, 2024. Accordingly,
15 Caesars' Motion will be fully briefed and ripe for decision shortly.

16       **B.**    **Plaintiffs Seek to Take Far-Reaching Discovery While the Motion Is Pending**

17 As part of its consolidation order (ECF 79), the Court instructed the parties to submit a
18 Discovery Plan and Scheduling Order ("Discovery Plan") in accordance with Federal Rule of Civil
19 Procedure 26(f) and Local Rule 26-1. The parties proceeded to confer about the handling of
20 discovery while Caesars' Motion is pending. Caesars indicated to Plaintiffs' counsel that
21 commencing discovery would be premature while the pleadings remained at issue and Caesars'
22 Motion remained pending, given that the Motion could eliminate or significantly streamline
23 discovery in the case. Caesars proposed instead that the parties negotiate any preliminary discovery
24 matters—such as a protective order and ESI protocol—upfront, while commencing discovery (if
25 at all) immediately after receiving a ruling on the Motion. Plaintiffs rejected this approach, and the
26 parties agreed to a schedule to brief Caesars' motion to stay.

27 On August 22, 2024, the parties filed a joint Discovery Plan. (ECF 85). Plaintiffs indicated
28 that they plan to seek far-ranging discovery on a broad set of topics, including all aspects of

Caesars' "data security" practices; any communications between Caesars "and third parties regarding the events at issue" in the Attack; and all materials relating to Caesars' investigation into the Attack and its incident response efforts. *Id.* at 3-4. In addition to Caesars, these topics necessarily will require extensive third-party discovery, given that Caesars' IT help-desk vendor fielded the social engineering calls that led to the Attack, and the attackers exploited certain third-party software as part of the Attack. For its part, Caesars reiterated its position in the Discovery Plan that discovery is premature and should be stayed pending a decision on the Motion.

On October 30, 2024, the Court entered the parties' proposed briefing schedule on Caesars' motion to stay, leading to the filing of this motion.(ECF 99).

### III.   THIS COURT HAS BROAD DISCRETIONARY POWER TO STAY DISCOVERY

This Court has the inherent power to stay proceedings before it, *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936), including "wide discretion in controlling discovery." *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 602 (D. Nev. 2011) (quoting *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). "In evaluating the propriety of an order staying or limiting discovery while a dispositive motion is pending, the court considers the goal of Rule 1 of the Federal Rules of Civil Procedure, which directs that the Rules shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." *Tradebay*, 278 F.R.D. at 602 (D. Nev. 2011) (citation omitted); *see also Schrader v. Wynn Las Vegas, LLC*, 2021 WL 4810324, at *4 (D. Nev. Oct. 14, 2021) (Weksler, J.) (a court may "properly exercise its discretion to deny discovery" where a meritorious motion to dismiss is pending).

Courts in this District have traditionally applied a three-part test to determine when discovery should be stayed. This test—known as the "preliminary peek test"—considers whether "(1) the pending motion is potentially dispositive; (2) the potentially dispositive motion can be decided without additional discovery; and (3) the Court has taken a 'preliminary peek' at the merits of the potentially dispositive motion to evaluate the likelihood of dismissal." *Closson v. The Bank of New York Mellon*, 2021 WL 1823567, at *1 (D. Nev. March 25, 2021).

Caesars recognizes that this Court has previously opted to apply a "good cause" standard endorsed by the Ninth Circuit, instead of the "preliminary peek" test. *See, e.g., Schrader*, 2021 WL 4810324, at *4. Under that standard, the Court considers whether (1) the dispositive motion can be decided without further discovery; and (2) good cause exists to stay discovery. *Id.* (citing *Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378, 383 (9th Cir. 1993). As shown below, the factors relevant to either test favor staying discovery pending resolution of Caesars' Motion.

## IV. THE COURT SHOULD STAY DISCOVERY PENDING CAESARS' MOTION

### A. Caesars' Motion is Potentially Dispositive

There is no question Caesars' Motion is potentially dispositive. Caesars seeks dismissal of the Complaint in full, as to all counts and all named Plaintiffs. Caesars' Motion, "if granted, would dispose of this case in its entirety." *Noland v. Organo Gold Int'l, Inc.*, 2019 WL 1779568, at *2 (D. Nev. Apr. 23, 2019). Because a grant of Caesars' Motion would resolve all claims, discovery in this case would be unnecessary and unwarranted.

### B. Caesars' Motion Will Be Decided Without the Need For Discovery

Caesars' Motion can also be decided without any discovery. "In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court asks only whether the pleadings are sufficient to establish a claim, not whether the Plaintiff could find evidence to support the pleadings." *Tracy v. United States*, 243 F.R.D. 662, 664 (D. Nev. 2007) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)), *aff'd in relevant part*, 301 F. App'x 675 (9th Cir. 2008). The issues raised in Caesars' Motion are legal in nature and based on the implausibility of Plaintiffs' allegations, including the lack of any cognizable injury or damages. Where, as here, a complaint is challenged as "deficient as a matter of law," discovery is not required for the resolution of that motion. *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987); *cf. DM Rsch., Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) ("[T]he price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome."). Accordingly, this factor—relevant to both the preliminary peek and good cause tests—weighs in favor of granting a stay. *See Bank of N.Y. Mellon v. Stewart Info. Servs. Corp.*, 2022 WL 494213, at *4 (D. Nev. Jan. 11, 2022).

### C. A "Preliminary Peek" Supports the Complaint's Likely Dismissal

A "preliminary peek" at Caesars' Motion reveals multiple grounds upon which Plaintiffs' action is likely to be dismissed—or at a minimum, narrowed in a way that will "significantly impact[]" the "scope of [] discovery" moving forward. *Borenstein v. Animal Found.*, 2020 WL 7323346, at *2 (D. Nev. Oct. 13, 2020). Foremost, Plaintiffs—who state they are members of Caesars' Rewards loyalty program who gamed at Caesars properties or online—do not allege any actual injuries to them that can be attributed to the Attack. Instead, their core theory of harm rests on a supposed "*increased risk* of fraud, identity theft, and other misuse of their [personally identifiable information (PII)]". Compl. ¶ 10. But as the Supreme Court's holding in *TransUnion LLC v. Ramirez* made crystal clear, the "risk of future harm" cannot supply standing for a damages claim. 594 U.S. 413, 415 (2021). Plaintiffs' recently filed opposition to Caesars' Motion only reinforces Plaintiffs' deficient harm allegations—Plaintiffs attempt to sidestep *TransUnion*, relying on pre-*TransUnion* decisions to insist that because the information involved was "highly sensitive," their allegations of a speculative, future risk of identity theft are sufficient. Opp. to MTD at 5-6 (citing *In re Zappos.com, Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2018) and *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010)). To the extent cases cited by Plaintiffs suggest that a risk of future injury qualifies as an injury-in-fact, they have been overruled by, or are inconsistent with, *TransUnion*. *See, e.g., I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1054 n.15 (N.D. Cal. 2022) ("question[ing] the viability of *Krottner* and *Zappos*" in "light of *TransUnion's* rejection of a risk of harm as a basis for standing in damages claims"); *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 824 (5th Cir. 2022) (recognizing earlier circuit precedent holding a risk of future harm conferred standing could not "be squared with" *TransUnion*). And while Plaintiffs attempt to point to a laundry list of other purported injuries that are typical of data breach complaints—such as "lost time," "spam," "emotional distress," and instances of attempted fraud—these allegations do not provide an independent basis for standing, including because they cannot be plausibly connected to the Attack. *See* MTD at 7-12.

That Plaintiffs cannot cobble together an actionable theory of harm is no accident—it is a direct result of the nature of the Attack and Caesars response. Plaintiffs acknowledge that the

Attack was a ransomware incident, and that Caesars' paid a large ransom to secure deletion of the affected data. As a result, there is no indication that the loyalty program database was ever disclosed (publicly or on the dark web) or misused. Plaintiffs do not allege or cite to any evidence that the data was actually sold, marketed, or distributed further after the Attack. Courts have repeatedly recognized, in similar incidents involving ransomware attacks, that such incidents on their face do not supply a basis to presume that the stolen data will be misused, because the motivation of such attacks is instead to extract a ransom. *See In re Practicefirst Data Breach Litig.*, 2022 WL 354544, at *7 (W.D.N.Y. Feb. 2, 2022) (rejecting standing in case where "a massive amount of data was copied by a hacker and held hostage for payment of a fee," finding that "plaintiffs do not plausibly allege that this data breach was the type of cyber-attack targeted to obtain confidential information for purposes of identity theft, as opposed to garden-variety ransomware attack"); *see also, e.g.*, *Patterson v. Med. Review Inst. of Am., LLC*, 2022 WL 2267673, at *3 (N.D. Cal. June 23, 2022) (no standing without allegations that hackers "actually viewed" or misused information, where facts instead indicated they "demanded a ransom" and returned data after receiving payment); *Quintero v. Metro Santurce, Inc.*, 2021 WL 5855752, at *7 (D.P.R. Dec. 9, 2021) (hackers encrypting data to demand ransom did not constitute "acquisition and misuse" necessary to support standing); *Travis v. Assured Imaging LLC*, 2021 WL 1862446, at *9 (D. Ariz. May 10, 2021) (ransomware attack did not give rise to injury supporting standing).

Beyond their lack of standing, each of Plaintiffs' individual causes of action suffers from fatal defects—and all have been challenged in Caesars' Motion. For example, Plaintiffs bring statutory fraud and consumer protection claims under nine different state's laws, but largely copy and paste the same allegations for each claim, disregarding numerous elements unique to each individual claim. Further, nearly every one of these claims is grounded in fraud, but Plaintiffs argue that they are entitled to sidestep Rule 9(b) to plead them (Opp. at 21-22)—reflecting the fact that Plaintiffs cannot meet this more exacting pleading standard. To top it off, Plaintiffs have attempted to plead a claim under the Texas Deceptive Practices Act without complying with the statute's pre-suit notice requirement. The remedy for that failure is to abate the *entire lawsuit* until

Plaintiffs comply with the statute's notice provision, *before* they are entitled to obtain discovery to substantiate the claim.

At bottom, Caesars raises multiple arguments in the Motion that could result in the complete dismissal of the Consolidated Complaint. "[A]t the least, [] the scope of the discovery in this case may be significantly impacted by how many causes of action survive dismissal." *Borenstein*, 2020 WL 7323346, at *2. Given the merits of Caesars' Motion, as well as the fact that "discovery is a time-consuming and costly endeavor," a stay of discovery pending resolution of Caesars' Motion is warranted. *Id.*

### D.     Good Cause Exists to Stay Discovery

Good cause also exists for a discovery stay. While "good cause" to stay discovery can be established where a movant shows that a plaintiff is "unable to state a claim for relief," *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981), it may also "exist based on other factors unrelated to the merits of the dispositive motion." *Jimenez v. GEICO Secure Ins. Co.*, 2023 WL 8254492, at *3 (D. Nev. Nov. 29, 2023) (Weksler, J.). One such factor is where a discovery stay would prevent "undue burden or expense" while a dispositive motion is pending. *Id.* (staying discovery where defendant showed that "discovery will be expensive and time-consuming, involving litigation over the proper scope and various depositions of [defendant's] out-of-state personnel") *Id.* at 4.

Given their size and complexity, data breach cases like this one present a "potentially enormous expense of discovery." *Razuki v. Caliber Home Loans, Inc*., 2018 WL 6018361, at *2 (S.D. Cal. Nov. 15, 2018); *accord In re Mednax Servs., Inc., Customer Data Sec. Breach Litig*., 2021 WL 10428229, at *3 (S.D. Fla. Oct. 9, 2021) (granting stay of discovery "to prevent extensive and expensive discovery from going forward until the Court is able to effectively determine the validity of Plaintiffs' claims"). For this reason, the Court has the discretion to stay discovery even where it has doubts that the "preliminary peek" factor is satisfied. *See Schrader* 2021 WL 4810324, at *5. For example, in *Schrader*, this Court found the "preliminary peek" test did not weigh in favor of a stay, but still ordered a stay of discovery based on a showing of "good cause." *Id*. The Court's good cause finding was based on several factors, including the case being a "complex . . .

putative class action," the likelihood of significant discovery based on the needs of the case, and the fact that dispositive motions were pending. *Id.*

These same considerations weigh in favor of a discovery stay here. Plaintiffs' Consolidated Complaint is sprawling, pushing nearly 600 numbered paragraphs and asserting 18 separate claims. These claims implicate not only Caesars, but out-of-state third parties as well. Extensive discovery will be needed from the third-party IT help-desk vendor involved in the Attack, whose personnel spoke directly to the attackers and were responsible for their entry into Caesars' systems.[1] Plaintiffs may also seek discovery from one or more software providers that developed software used by Caesars and accessed during the Attack, as well as law enforcement personnel who investigated the Attack.[2] Further, while Plaintiffs have yet to serve written discovery requests on Caesars, all signs point to this discovery being broad, far-reaching, and burdensome. Plaintiffs have indicated that they will seek discovery concerning all aspects of Caesars' "data security" practices, and all materials relating to Caesars' investigation and response to the Attack. This implicates dozens if not hundreds of individuals across Caesars' organization. The burden and expense of procuring and producing the materials that Plaintiffs will undoubtedly seek will be substantial, and will likely require extensive privilege review and raise potential privilege disputes given counsel's involvement in the investigation and response to the Attack. Plaintiffs also allege that the putative class—consisting of all members of Caesars' Rewards program—contains upwards of 65 million people, meaning that class discovery (which Plaintiffs intend to take at the same time as merits discovery) will itself be highly time-consuming and burdensome. And this is all before reaching expert discovery, which will likely involve multiple technical experts on merits issues and additional experts addressing class certification issues. Taken together, the enormous burden and expected seven-figure expense of discovery in this case makes it "more just to delay discovery to accomplish the inexpensive determination of the case" before proceeding. *Jimenez*, 2023 WL 8254492, at *4.

---

[1] This vendor is based in India, with U.S. offices located primarily in New Jersey.

[2] For example, Plaintiffs have served a preservation notice on third-party Okta, Inc., a company that provided cloud-based identity and access management software used by Caesars.

1   Further, even if the Court grants the Motion only in part, the scope of discovery could be dramatically affected, making a stay of discovery advisable. If a portion of the Consolidated Complaint is dismissed, "it may be that a narrowly-directed and less burdensome discovery plan should be allowed." *In re Graphics Processing Units Antitrust Litig.* 2007 WL 2127577, at *5 (N.D. Cal. July 24, 2007); *see also Speaks v. Employers Holdings, Inc.*, 2023 WL 4561451, at *4 (D. Nev. July 17, 2023) (Weksler, J.) (granting motion to stay discovery where motions to dismiss had "the potential to simplify, or at least solidify, the parties, claims, and scope of discovery in the case"). As one example, Plaintiffs bring several fraud-based claims based on alleged misrepresentations and omissions by Caesars concerning its cybersecurity practices. Caesars has challenged those claims on multiple grounds, including that Plaintiffs fail to identify any actionable misstatements or omissions, do not plead reliance, and do not meet the specificity requirements of Federal Rule of Civil Procedure 9(b). If the Court were to grant this aspect of the Motion, there would be no basis for discovery concerning any purported misrepresentations or omissions, or of Caesars' knowledge of facts that Plaintiffs claim Caesars had a duty to disclose.

Requiring Caesars and relevant third parties to engage in expansive discovery at this stage is not warranted under Rule 1. If the Motion is granted, there will be no need for any discovery. Given that the topics of discovery listed by Plaintiffs in the Discovery Plan are plainly burdensome, this weighs significantly in favor of granting the motion to stay. *See Long v. Gamo Outdoor S.L.U.*, 2022 WL 2819662, at *2 (D. Nev. July 18, 2022) (granting motion to stay discovery and considering the fact that the plaintiff "served a large volume of [discovery] requests"). Accordingly, a stay is appropriate because it "would result in the inexpensive determination of the action by ensuring that the parties do not conduct unnecessary discovery before issues are resolved or narrowed by the motion to dismiss." *Id.*; *see also Duffy v. ASNY NY, LLC*, 2022 WL 1785395, at *3 (D. Nev. May 31, 2022); *Stewart.*, 2022 WL 494213, at *4. The requested stay would also further reduce the burden on the Court by eliminating the likely need to address discovery disputes until after the Court has had an opportunity to assess the viability of Plaintiffs' Consolidated Complaint.

Plaintiffs, on the other hand, will not be prejudiced by the requested discovery stay. As noted above, Caesars' Motion will be fully briefed by November 27. Caesars remains willing to negotiate preliminary discovery orders, including an ESI protocol and protective order, while its Motion is pending. This is another reason why staying discovery would—assuming the case proceeds past the motion to dismiss stage—not unreasonably delay the action and not "impede Rule 1's objective of a speedy determination." *Long*, 2022 WL 2819662, at *2. In the end, if discovery is stayed and the Court later denies "[d]efendants' motion to dismiss . . . [p]laintiffs may only suffer a delay in receiving answers to their discovery requests." *Duffy*, 2022 WL 1785395, at *3. Given the context of this case, any delay in Plaintiffs' receipt of discovery responses does not justify proceeding with expansive discovery in this consolidated action.

## V. CONCLUSION

For these reasons, the Court should stay discovery pending resolution of the Motion.

Dated: November 13, 2024

McDONALD CARANO LLP

*/s/ Adam Hosmer-Henner*
Adam Hosmer-Henner (NSBN 12779)
Chelsea Latino (NSBN 14227)
Jane Susskind (NSBN 15099)
100 West Liberty Street, Tenth Floor
Reno, Nevada 89501
(775) 788-2000
ahosmerhenner@mcdonaldcarano.com
clatino@mcdonaldcarano.com
jsusskind@mcdonaldcarano.com

LATHAM & WATKINS LLP
Serrin Turner (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, New York 10022-4834
Telephone: (212) 906-1200
serrin.turner@lw.com

*Attorneys for Defendant Caesars Entertainment, Inc.*